JACOB BERLIN, Respondent, *v.* JOSEPH A. EDDY *et al.*, Appellants.

*Bailments—Stocks.*—Stocks are not like goods or articles of personal property, of variable quality ; and the sale of one parcel by a bailee will answer the purpose of crediting the bailor with the proceeds of stock pledged, as well as the sale of the specific shares.

*Appeal from St. Louis Circuit Court.*

The respondent, in October, 1857, instituted an action against the appellants, Eddy, Jameson & Co., in New York, upon an indebtedness for eight hundred dollars and five hundred dollars. The appellants answered, and during the pending of the suit an agreement was made whereby thirteen hundred dollars' worth of scrip or stock of the Gardener Gold Mining Company was pledged by the appellant for the security of the debt upon which the action was brought, and out of which agreement the counterclaim set up by appellants in the Circuit Court arose.

Under this contract Eddy, on behalf of appellants, deposited $1300 worth of stock or scrip of the Gardener Gold Mining Company with Coe & Wallis, of New York, and his individual note for $350, and it was agreed that if Eddy failed to pay $500 on the 20th June next following, and $855 on 20th August, the amount of scrip so delivered as well as last named note should be turned over to respondent as pledges and collateral security, with power of sale, and proceeds to be applied to their credit; and that respondent might enter up judgment forthwith for $1300.

Further, that until time of payment Eddy should have the privilege to redeem the scrip at rate of one dollar per share for new and ten cents per share for old issue.

The contract contains the following further provision : "It is further mutually understood by the parties hereto that the said stock which shall be returned as aforesaid to said Berlin, if any, upon the failure by the said Eddy to comply with his said payments, shall be deemed and considered as the property of the said Eddy, pledged to the said Berlin as collateral security for the balance of his claim against said Eddy, with leave to the said Berlin to sell the same at any time at public sale or at the stock exchange, the said Eddy to be credited witn the net amount of said sale on account."

The stock was deposited by Eddy with Coe & Wallis; upon the failure of appellants to pay respondent, Coe & Wal-

lis transferred said stock to respondent; respondent had a large amount of same kind of stock already in his possession, and he mixed up his own with the appellants' stock so that he could not tell one from the other; after he obtained this scrip of appellants he made sales, but whether of his own or this he cannot tell. On the 26th of August, 1858, he sold $1300 worth of stock at thirty-three and one quarter cents per share, and this is the credit which the court gave in favor of appellants.

It further appeared that this stock of appellants ranged, in the New York stock market, from thirty-seven and a half and fifty cents to one dollar per share before and after the sale of 26th August, in same place and at auction sales, and brought the above prices. The cause was tried by the court, which held the sale of 26th August as binding on appellants, and gave verdict and judgment for amount of New York judgment, less proceeds of sale of 26th August. The following declaration of law, asked by appellants, was refused:

"If the court believe from the evidence that on or about 20th August, 1858, Coe & Wallis delivered to plaintiff the scrip or certificates of shares of stock mentioned in said contract and in the deposition of plaintiff; that plaintiff held and was the owner of large quantities of other scrip or certificates of the same stock, and placed and mixed the certificates delivered to him by Coe & Wallis with his own in such manner that they could not be distinguished or separated, and that plaintiff, on the 26th August, 1858, sold at auction 1300 shares of said stock taken indiscriminately from all the stock held by him, then the defendants are not limited in the credit to which they are entitled to the price brought by said 1300 shares at said auction sale, but are entitled by way of credit in this action to the highest price proved to have been the value of said stock between the date of the delivery thereof to plaintiff and the time of the commencement of this suit.

*Krum & Decker*, for appellants.

Berlin v. Eddy.

I. If the intermingling of the stock occurred by the defendants' consent, they would be entitled to *pro rata* proceeds as part owners or tenants in common, to be credited on their debt.

II. The confusion of goods having occurred by act of plaintiff wrongfully and without defendant's consent, whereby it has become impossible to ascertain the proceeds of sales of trust stock, (except for the plaintiff who neglected to furnish the proof,) they are entitled to be credited the highest auction price which the stock would have brought up to the time of the institution of this suit. (Seymour v. Wickoff, 10 N. Y. 6 Seld. 223; Lewis v. Whitmore, 5 N. H. 365; 3 Stephens, N. P. 2702; 6 Hill, 461; Willard v. Rice, 11 Met. 493; Brown v. Sax, 7 Cow. 95.)

The measure of damage, where a party refuses or has made it impossible by his own act to ascertain real value, is the highest value which the article will bear. (1 Strange, 505; Lafton v. White, 15 Ves. 433; Ringgold v. Ringgold, 1 Har. & J. 11.)

*J. N. & C. F. Burnes*, for respondent.

I. For the conversion of the stock by the plaintiff to his own use, the proper measure of damages is the value of the stock at the time of the conversion; therefore the instruction asked for by the defendants was properly refused. (21 Mo. 290–294.)

II. There was no conversion of the stocks by the plaintiff. The mixing them with other stocks of precisely similar value and description, all being transferable by delivery merely as bank bills, does not constitute a conversion, and plaintiff had a right under the agreement to have the proper number sold for account of defendants, and the sale having been fairly made, the defendants are only entitled to credit for the amount of the net proceeds of such sale.

III. The answer of the defendants does not charge that the plaintiff converted the stock to his own use, but on the contrary expressly charges that plaintiff caused said stock to be

sold according to the contract, and received the proceeds of such sale and converted these proceeds to his own use, and the amount of these proceeds is the issue tendered by the answer.

BATES, Judge, delivered the opinion of the court.

The court below very properly refused the first instruction moved by the defendants.

They had by their answer set up that the plaintiff had sold certain scrip for shares of certain stock, which he held as collateral security, and had appropriated the proceeds of the sale to his own use. They proved these facts (except that the sale had produced a much smaller sum than they had charged) by the testimony of the plaintiff himself. It also appeared in his testimony that he gave Eddy, one of the defendants, and the acting one in the matter, notice of the time and place of sale, and that he, the plaintiff, at the time of the sale of the stock, held other shares of the same stock, and that he could not tell whether the stock so sold by him was the identical shares delivered to him as collateral security or not. The defendants claim that the plaintiff is therefore under an increased responsibility in regard to the stock.

The shares of the stock in question do not appear to have been in any way distinguished or distinguishable from any other similar number of shares of the same stock; all were of equal worth and worthlessness, and the sale of one batch answered the purpose as well as another.

The Circuit Court having given the defendants credit for the proceeds of the sale, and entered judgment for the balance against them, its judgment is affirmed, with ten per cent. damages.

Judges Bay and Dryden concur.